## THE "BENEFACTOR."

### STEAMSHIP COMPANY v. MOUNT.

1. A ship-owner who, on the trial of the issue as to the cause of collision, contests all liability whatever, is not thereby precluded from claiming the benefit of the limitation of liability provided by sect. 4283 of the Revised Statutes.

2. After such trial, a decree declaring his ship to be in fault, and fixing the damages which the respective libellants sustained, is *res judicata*, and, until reversed, must stand as the basis for determining their *pro rata* share of the fund substituted by stipulation for the ship and freight. On filing his petition for limited liability, the libellants, until final action shall be had thereon, should be restrained from enforcing the decree.

3. *Semble*, that the stipulation on filing that petition should be for the value of the ship after the collision, with the addition thereto of the freight then pending, it not appearing that her value was subsequently diminished.

4. Proceedings for a limitation of liability, if not instituted until after a party has obtained satisfaction of his demand, are ineffectual as to him. A return of the money should not be compelled, nor, in general, should relief be granted, except upon condition of compensating the party for any costs and expenses to which he may have been subjected by reason of the delay of the ship-owner in claiming the benefit of the statute.

5. The court, in reversing the decree of the Circuit Court, directs that court to proceed upon the petition for limited liability, and promulgates a rule that such a petition shall be hereafter filed in the Circuit Court when the case is there pending.

APPEALS from the Circuit Court of the United States for the Eastern District of New York.

The facts are stated in the opinion of the court.

*Mr. Cornelius Van Santvoord* for the appellant.

*Mr. Franklin A. Wilcox* and *Mr. Robert D. Benedict, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

On the 26th of February, 1875, a collision occurred off the coast of New Jersey, in the vicinity of Squam Beach, between the schooner "Susan Wright" and the steamship "Benefactor," which resulted in the sinking of the former with a total loss of vessel and cargo. Soon afterwards a libel was filed against the steamer in the District Court of the United States for the Eastern District of New York, at the suit of the owners of the schooner for the loss of their vessel; and a separate

libel at the suit of the crew for the loss of their personal effects; and pending the proceedings on these libels, a petition of intervention was filed by the owners of the schooner's cargo to recover the value of the same. The steamer being attached, was duly appraised and her value fixed at $40,000, and the appellants, the New York and Wilmington Steamship Company, having appeared as claimants and owners thereof, an order was made granting them leave to give a stipulation, with sufficient sureties, in said appraised value of the steamer, and directing that said stipulation should be for the benefit of the libellants in both of said suits (in case they should establish the liability of the steamship), and of all persons and parties who might, by due proceedings in the court, show themselves entitled to liens upon her by reason of said collision; and that upon giving such stipulation the steamer should be discharged from all liability. A stipulation was filed by the claimants in pursuance of this order, and the steamer was thereupon discharged.

The claimants then filed answers to each of the libels, denying that the steamer was in fault, and denying all liability by reason of the collision. Upon the issue thus formed proofs were taken by the parties. On the twenty-first day of April, 1876, the District Court adjudged the steamer to have been in fault, and the damages of the libellants and intervenors were assessed, amounting in the aggregate to $61,810.49. The suits were then consolidated, and on the twenty-first day of October, 1876, a decree was rendered in favor of the libellants and intervenors for the several amounts awarded to them respectively, and directing the claimants and their sureties to pay into the registry of the court the amount of their stipulation; namely, $500 for costs, and $40,000 and the interest thereon for the value of the steamer. The decree further directed that unless an appeal should be taken within the time limited by law, the clerk should distribute the proceeds of said stipulation among the libellants and co-libellants in proportion to their several recoveries. From this decree an appeal was taken to the Circuit Court.

It thus appearing that the damages of those interested in the schooner and her cargo exceeded the value of the steamer, and

she being condemned by the court of first instance as being in fault for the collision, the claimants, on the fifteenth day of February, 1877, filed a petition in the said District Court under the fifty-fourth Rule in Admiralty, claiming the benefit of limitation of liability provided for in sect. 4283 of the Revised Statutes.

In this petition the claimants allege, as required by the act, that the collision happened and the loss and damage occurred without their privity or knowledge. They then state the fact of the filing of the libels before mentioned, and the proceedings which took place thereon; and restate the facts and circumstances on which they relied in their answers to the libels for exemption from all liability. They then state that they desire to contest their liability and that of the steamship for the damage occasioned by the collision, and also to claim the benefit of limitation of liability provided for by sect. 4283 of the Revised Statutes. They further state that the freight pending at the time of the collision was $1,220.32; and they tender themselves ready and willing and offer to give a stipulation with sureties in the value of the steamship and freight for the payment thereof into court whenever it should be so ordered. They also offer to admit in evidence, at the proper time, the depositions and proofs taken in the libel suits. Then, having stated the fact that the damages were assessed in said suits to an amount greatly exceeding the value of the steamship and freight pending, they pray for an order permitting them to give the stipulation proffered; and that, if it shall be ultimately adjudged that the steamship is liable, a monition may issue against all persons claiming any damage from the collision, citing them to appear before the court and make proof of their claims before a commissioner to be designated for that purpose; and for a final decree that the amount of the stipulation (after payment of costs and expenses) be divided *pro rata* among the claimants, and that upon payment thereof the steamship and the petitioners be for ever discharged from further liability; and that an order be made to restrain the libellants in the other suits from further prosecuting the same, and that the court proceed to hear and determine the liability of the petitioners upon the testimony taken on the trial of those suits; and that they may

have the benefit of appeal from any decree to be made, without giving further or other security than that required by the said act limiting their liability; and that the testimony taken as aforesaid be used on said appeal as though originally taken in this proceeding; "and that they may have and receive such other and further order in the premises as in equity they may be entitled to receive."

A copy of this petition, with notice of an application for an order restraining the libellants in the first suits from the further prosecution thereof, being served upon said libellants, they filed three exceptions to the petition; the first of which was overruled. The second and third were as follows: —

"*Second,* For that the said two suits of William H. Mount and others, and William Hirst and others, against the said steamship 'Benefactor,' having been tried upon the merits, and submitted and determined, and the final decree, a copy whereof is annexed to the said petition, having been entered in the suit formed by the consolidation of such two suits, before the filing of the petition herein; and no other suit or proceeding, for any loss, damage, destruction, or injury occasioned by said collision, having been commenced, and it not being alleged or claimed that any other persons or parties than the libellants in said two suits (being the libellants in said consolidated suit) have any claims for loss, damage, destruction, or injury occasioned by said collision, but the contrary thereof appearing upon the face of said petition, the petitioner is not entitled to the relief sought in and by its said petition.

"*Third,* For that the facts stated in said petition show that the relief sought thereby cannot now be granted by this court."

The district judge not only denied the motion for a restraining order, but, upon the exceptions taken, dismissed the petition; and, on appeal to the Circuit Court, this decree was affirmed. The ground of dismissal relied on by the district judge (which was adopted by the Circuit Court) was that the petition came too late, inasmuch as it was not filed until after a trial of the cause of collision upon its merits and a final decree thereon. The judge referred to the fifty-sixth admiralty rule, which declares that in proceedings to obtain a decree for a

limited liability, the owners may contest all liability on their part or that of their vessel, as well as claim a limitation of liability under the statute; provided, that in their libel or petition they shall state the facts and circumstances by reason of which exemption from liability is claimed.  He supposes that this right to contest the case on the merits at the same time and in the same proceedings that a limited liability is claimed, implies that such proceedings must be instituted before the case has been tried on its merits; because a second trial of the same matter, after it has once been adjudicated, will not be deemed to have been contemplated by the rule.  In supposing that a second trial of the merits, between the same parties, was not contemplated by the rule, the judge was correct.  But it was certainly not the intention of the admiralty rules to preclude a party from claiming the benefit of a limited liability after a trial of the cause of collision.  The fifty-sixth rule was merely intended to relieve ship-owners from the English rule of practice, which requires them, when they seek the benefit of the law of limited liability, to confess the ship to have been in fault in the collision.  This was deemed to be a very onerous requirement; for in many, if not in most cases, it is extremely doubtful which vessel, if either, was in fault; and to require the owners of either to confess fault before allowing them to claim the benefit of the law, would go far to deprive them of its benefit altogether.  Hence this court, in preparing the rules of procedure for a limitation of liability, deemed it proper to allow a party seeking such limitation to contest any liability whatever.  But this rule of procedure was not intended to abrogate, and indeed could not abrogate, the rule of law, that *res judicata*, or a matter once regularly decided between parties in a competent tribunal, cannot be again opened by either of them except in an appellate proceeding.  Of course, therefore, the rule of procedure allowing a contestation of all liability is subordinate to this rule of law, and cannot apply where the question of general liability has already been adjudicated.  Nor, in such case, can the proceedings for a limitation of liability prevent the due course of appeal in the primary cause of collision; though, by the exercise of the court's authority, they may prevent the parties from attempt-

ing, by execution, or other process, to collect any moneys recovered by them beyond the amount awarded in the said proceedings. The amount recovered, whether before the limitation proceedings are commenced, or afterwards, and whether in the court of first instance, or an appellate court, will stand as the recoverer's basis for *pro rata* division when the condemned fund is distributed. In all other respects the proceedings for obtaining a limitation of liability may proceed in ordinary course. If suit against the vessel or the owners has been commenced and evidence has been taken, though no trial had, it will be in the discretion of the court to require that such evidence shall be received and used in the limitation proceedings. The flexibility of admiralty proceedings will enable the court, in most cases, so to shape their course as to attain justice between the parties.

But since the statute is imperative, that where a loss occurs in a vessel by embezzlement or by collision or other thing, without the privity or knowledge of the owner, his liability " shall in no case exceed the amount or value of his interest in the vessel and her freight then pending," it would be a questionable exercise, by this court, of its power to regulate the proceedings, if, by such regulation, it should prevent a party from having the benefit of the law unless he took initiatory steps for that purpose before it appeared that he was liable at all. Such was not the intention of the rules adopted in 1872. Admiralty Rules, 54–57. They were intended to facilitate the proceedings of the owners of vessels for claiming the limitation of liability secured by the statute without regard to the time when such proceedings might be commenced, or whether before or after the general liability should be fixed. To require such proceedings to be commenced before a trial of the cause of collision would in many cases work injustice. In addition to the reasons already adverted to, it may be added that the owners of the vessel found in fault may often not know the amount of damage and loss sustained by the other vessel and her cargo. It may greatly exceed their expectations, and, contrary to what was originally known or supposed, may turn out to be much greater than the value of their own vessel and the freight pending thereon.

The institution of proceedings for a limitation of liability must, however, be subject to some limitations growing out of the nature of the case. They must be regarded as ineffectual as to any specific party if not undertaken until after such party has obtained satisfaction of his demand. The doctrine of laches, as applied in admiralty courts, would be properly applicable to such a case. The court would justly refuse its aid in compelling a return of money received. But the omission to take the benefit of the law in reference to a particular party ought not to preclude the owners of a ship from claiming its benefit as against other parties suffering loss by the same collision. There may be many persons who have sustained but trifling losses which the owners may be perfectly willing to pay; whilst, at the same time, they may have just ground for resisting the claims of others. In such cases, a concession to the demands, or a failure to resist the claims, of one party, ought not to conclude them as against the demands of other parties.

Precisely when the owners of a ship in fault ought to be regarded as precluded from instituting proceedings for a limitation of liability might be difficult to state in a categorical manner. Perhaps they can never be precluded so long as any damage or loss remains unpaid. But in a particular case relief should not be granted except upon condition of compensating the other party for any costs and expenses he may have incurred by reason of the delay in claiming the benefit of the law.

But it is unnecessary to pursue the subject further. Each case as it arises will suggest the proper course to be pursued therein.

The petition for relief in the present case was justly liable to exception so far as it sought to retry the question of fault and general liability as between the petitioners and the parties in the libel suits. That question was determined by the decree made upon the libels which had been filed; which decree could only be reviewed on appeal. But so far as the petition sought a limitation of the owners' liability to the value of the ship and freight, it was free from objection and ought to have been sustained ; and the libellants and intervenors ought to have

been restrained, by order of the court, from collecting or attempting to collect or enforce their respective decrees, whether obtained in that court or in the court of appeal, in any other manner than by the *pro rata* distribution of the fund standing by stipulation in place of the ship and freight.

A question has been raised by the counsel for the appellees, whether the appraisement of the value of the steamship, made at the time she was libelled, is sufficient for the purposes of the proceeding to obtain limitation of liability. The court below having dismissed the petition, did not pass upon this question; and, therefore, it is not essential that we should express an opinion in reference to it at this time. But since the petitioners specifically pray that the court will order and direct that they be permitted to give a stipulation in the sum of $41,220.32, which is precisely the amount of the former stipulation in the libel suits, with the addition of the freight pending, it may be advisable that we should indicate our views on the subject. The counsel for the appellees is mistaken in supposing that the value of the offending vessel at the time of the collision furnishes the only criterion of the amount for which her owners are liable. In *Norwich Company* v. *Wright* (13 Wall. 104) we held that the owners of the offending vessel could, under the statute, discharge themselves from personal liability by surrendering the ship and freight. This would imply that the value of the ship at the time of surrender (with the addition of the pending freight), if the surrender is made in a reasonable time, would furnish a proper criterion of the amount of liability. In the case cited it was also said (p. 124) that, "if the vessel were libelled and either sold or appraised, and her value deposited in court, this sum, together with the amount of freight (when proper to be added), would constitute the *res* or fund for distribution." In England, the value of the vessel immediately before the collision was regarded as the true criterion of liability. But the English law is different from ours. It makes the owners liable to the extent of the value of the ship at the time of the injury, even though the ship itself be lost or destroyed at the same time; whereas our law, following the admiralty rule, limits the liability to the value of the ship and freight after the injury has occurred; so that if the ship

is destroyed the liability is gone; and, whether damaged or not damaged, the owners may surrender her in discharge of their liability.

What may be the rule if, after the collision has occurred, the offending vessel should meet with other disasters greatly impairing her value, is a question which may require further consideration when the case arises. Nothing of the kind is alleged in the present case.

It seems to us, therefore, that the District Court, unless it has some cause to believe that the former valuation was unfairly made, may adopt that valuation in the proceedings for a limitation of liability.

The decree of the Circuit Court will be reversed, and the record remanded with directions to enter a decree reversing the decree of the District Court, and giving directions for further proceeding in accordance with this opinion; and it is

*So ordered.*

Motions having been made to modify the judgment and mandate, Mr. JUSTICE BRADLEY at a subsequent day of the term delivered the opinion of the court.

Since deciding these cases and issuing mandates therein, both parties have applied for additional directions with regard to further proceedings in the court below. The respondents ask that the judgment and mandate in the second case be amended so as to direct that further proceedings for securing a limited liability of the appellants shall be had in the Circuit Court instead of the District Court. It is undoubtedly the general rule that an appeal in admiralty, like all appeals derived from the practice of the civil law, carries the whole cause to the appellate court, in which it is to be tried anew upon the same and such additional proofs as the parties may propound. Whilst this is the general rule, there is also no doubt that the legislature may authorize the appellate court, after hearing the cause, and determining the questions raised therein, to remand it to the court *a quo* for further proceedings. The late practice under the bankrupt law exhibited an instance of this mode of proceeding. The entire history of appeals in admiralty as well as in equity, in this court, is another instance of the same practice.

But on appeals in admiralty from the District to the Circuit Court, the latter has always retained the cause for trial and final disposition without remanding to the District Court. But in the late revision of the statutes of the United States it is declared as follows: "A circuit court may affirm, modify, or reverse any judgment, decree, or order of a district court brought before it for review, or may direct such judgment, decree, or order to be rendered, or such further proceedings to be had by the District Court, as the justice of the case may require." Rev. Stat., sect. 636. The question whether the cause should be retained by the Circuit Court or remanded to the District Court was not raised on the argument, and in entering judgment we directed the Circuit Court to reverse the decree of the District Court and give directions for further proceedings, in conformity with our opinion. The respondents now suggest that this direction could not properly be made, because, as they contend, that section does not extend to admiralty proceedings. In this, however, we think that they are mistaken. It follows several other sections which give the right of appeal and writ of error respectively in admiralty and other cases from the District to the Circuit Court, and makes no distinction between them in conferring upon the latter the power to affirm, modify, or reverse, together with power to give directions to the District Court for further proceedings. It is a re-enactment of a clause in the second section of the act of June 1, 1872, c. 255, entitled "An Act to further the administration of justice" (17 Stat. 196); and in that act its application seems to be general to all appeals from the District to the Circuit Court.

But whilst this seems to be the law, — namely, that the Circuit Court, after hearing a cause on appeal, has power to remand with directions, — it may not be advisable to resort to it in ordinary cases where the Circuit Court can as well dispose of the whole case. As we had already established rules for regulating the proceedings in the district courts upon petitions for the benefit of a limited liability under the act of 1851, we supposed it would be more convenient to continue the further proceedings in that court. Our attention, however, having been more particularly called to the circumstances of this case, we think

it possible that the rights of the parties may be better pre-
served by continuing the cause in the Circuit Court.   We
have deemed it advisable, therefore, to alter our judgment in
this respect, and to prepare a general rule, which we shall now
announce, extending to the circuit courts on appeal the regu-
lations which have heretofore been adopted for the district
courts in cases of proceeding to obtain the benefit of a limited
liability under the act.   We make this general rule in order to
obviate all objections as to the ability of the Circuit Court to
proceed.

A question has been made whether, under our decisions in
these cases, proceedings ought to be stayed on the decree of the
respondents against the steamship " Benefactor," her claimants
and stipulators, until the determination of the proceedings on
the petition for limited liability.   We have no hesitation in
saying that they ought to be so stayed.   Our opinion was very
clearly expressed, in deciding the limited liability case, that
the petitioners were not too late to obtain relief, and that pro-
ceedings to collect any decrees rendered against them should be
stayed.   We held that such decrees would have the effect of
*res judicata* on the question of the liability of the steamship,
and as to the amount of damage sustained by the libellants;
and that the amount of the decrees would stand as the basis
for determining the *pro rata* share of the libellants in the com-
mon fund to be distributed on the termination of the limited
liability proceedings.   We do not well see how our views could
have been misunderstood on this point.

It is not necessary, or proper, at this time, to pass upon the
question whether the appellants, when called upon to pay the
amount of their stipulation into court, will be liable to pay
interest thereon or not; nor whether they will be liable to pay
the costs of the libellants in addition to the value of the steam-
ship; nor whether the Circuit Court may or may not require
them to pay the value of the said ship into court, or give a
new bond, before the termination of the limited liability pro-
ceedings.   Should the future action of the Circuit Court on
any of these points be brought before us on appeal, it will
be time enough then to give them the proper consideration.

The order of the court upon the several applications now

submitted will be, that the former judgment and mandate of this court in the case arising upon the petition of the appellants, the New York and Wilmington Steamship Company, for the benefit of a limited liability, be, and they are hereby, modified so far as they contain directions to the Circuit Court to enter a decree reversing the decree of the District Court and giving directions for further proceedings; and that instead of said portion of the said judgment and mandate, directions be, and they are hereby, given to the Circuit Court to proceed upon the petition of the said New York and Wilmington Steamship Company for such limited liability, and hear and determine the same, in conformity with law and the opinion of this court, in the mean time staying proceedings upon any and all decrees or judgments against the steamship " Benefactor " by reason of the collision referred to in said petition until the proceedings for limited liability be determined, and to answer the determination of the same. It is further ordered that each party pay their own costs on these motions.