### ERIE R. CO. v. HANSEN.

(Circuit Court of Appeals, Third Circuit. July 24, 1919.)

No. 2426.

MASTER AND SERVANT ⬥278(3)—ACTION FOR DEATH OF SERVANT—PROOF OF NEGLIGENCE OF SHIPOWNER.

    The death of the master of a lighter, who was struck on the head and killed by the cap rail of the vessel, which was torn loose by the sudden tautening of a line from a tug to which he had just made fast, and which, when slack, hung over a corner of the rail, *held* not shown by the

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

evidence to have been due to negligence of the owner as alleged, in that the timber of the log rail was unsound; it being shown that it had been rebuilt of sound timber within three months.

Appeal from the District Court of the United States for the District of New Jersey; Thomas G. Haight, Judge.

Petition in admiralty of the Erie Railroad Company, owner of Erie Lighter 108, for limitation of liability. From a decree awarding damages to Fred Hansen, administrator of Theodore Thonassen, petitioner appeals. Reversed.

George S. Hobart, of Jersey City, N. J., for appellant.
Ralph N. Kellam, of Philadelphia, Pa., for appellee.

Before WOOLLEY, Circuit Judge, and THOMPSON and MORRIS, District Judges.

WOOLLEY, Circuit Judge. Thonassen, an employé of Erie Railroad Company, died from injuries sustained on one of its lighters when engaged in interstate commerce. His administrator brought an action against the Railroad Company in a court of the State of New Jersey, under the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, as amended by Act April 5, 1910, c. 143, 36 Stat. 291 [Comp. St. §§ 8657–8665]), to recover for damages which Thonassen's dependents had sustained through his death. While this suit was pending, the Railroad Company, the owner of the lighter, filed a petition in the District Court of the United States for the District of New Jersey, under Admiralty Rule 54, claiming the benefits of the Shipowners' Limited Liability Acts (sections 4282 to 4289, inclusive, of the Revised Statutes as amended by the Acts of June 26, 1884, 23 Stat. 57, and June 19, 1886, 24 Stat. 80 [Comp. St. § 8027]) and praying an injunction against the prosecution of the suit in the state court. Appropriate proceedings followed, including an injunction, reference for the appraisement of the lighter, her tackle, apparel and furniture, and a monition to all persons claiming damages for injuries occasioned by the disaster to appear and prove their claims. Thonassen's administrator contested these proceedings at each stage and challenged the Court's jurisdiction to limit the petitioner's liability and thereafter to determine the same, on the ground that the Federal Employers' Liability Act repealed by implication the Shipowners' Limited Liability Acts as to cases which come within the provisions of the former. The learned trial judge decided adversely to the claimant's contention on authority of The Passaic, 190 Fed. 644, and 204 Fed. 266, 122 C. C. A. 466, and on his own reasoning. The Court then proceeded to trial (The Benefactor, 103 U. S. 239, 26 L. Ed. 351) and rendered a decree holding the petitioner liable to the claimant for the full amount of the lighter's appraisal. The petitioner appealed.

As the claimant did not take a cross-appeal from the action of the trial judge in granting the petition of the shipowner to limit its liability under the applicable statutes, the correctness of his rulings in that regard is not involved in this appeal. This statement is made for the

purpose of showing that the court's rulings on the Federal statutes involved in these proceedings are in no way embraced in the reversal of the court's decree which is to follow.

In this appeal, there is no question of law; the question is one purely of fact.

The tug Waverly was preparing to tow Erie Lighter No. 108 from Weehawken to Brooklyn. The tug picked up the lighter at a Weehawken dock and by stern lines pulled her from the slip out into the river. Intending to tow the lighter, not tandem, but lashed to her side, the tug let go the lines and moved to a position slightly distant from the lighter, in which the port bow of the tug was at right angles with the starboard bow of the lighter. The tug, with bow up-stream and engines stopped, relied upon the strong ebb tide then flowing to bring the lighter down stream toward her. The tug was light and stationary; the lighter, heavily laden, moved broadside with the tide toward the tug. As the bow of the tug came into position athwart the bow of the lighter, a deck hand on the tug passed a strap to Thonassen, the captain of the lighter, and, with one end fast to the tug, directed him to make the other end fast to the lighter. The strap was a spliced loop of line six fathoms long and about one and three-quarter inches thick. The tug captain intended to use the line thus made fast to arrest the motion of the bow of the lighter, and then allow the tide to swing the stern of the lighter toward the stern of the tug. When the two craft came side by side, he intended to lash them together and thus complete the manoeuvre.

When the deck hand passed the strap to the lighter, Thonassen caught it and put it over the bow bit. One line of the loop trailed properly over the lighter rail; the other, being quite slack, fell over the starboard side and around the starboard corner. As the lighter sagged with the tide and was falling into place along the port side of the tug, the slack of both strands of the strap was quickly taken up. As the one which overhung the starboard corner became taut, it rose with great impetus, struck the corner cap rail, tore it from its fastening and threw it into the air, striking Thonassen on the head and causing injuries from which he died.

These facts are not disputed. The controversy arose out of the inferences to be drawn from them.

The claimant's position at the trial, and on appeal, was that Thonassen's death was due either to negligence or to inevitable accident, that the manner of the accident raises a presumption of negligence, and that, accordingly, the burden of proving inevitable accident rests upon the petitioner, citing Hawgood & Avery Transit Co. v. Meaford Transp. Co., 232 Fed. 564, 146 C. C. A. 522; The Lackawanna (D. C.) 201 Fed. 773. The defense was lack of negligence on the part of the petitioner and contributory negligence on the part of the decedent.

We recognize that there are maritime accidents which from their very nature raise a presumption of negligence, as, for instance, when a barge drifts from her moorings and floating down stream comes into collision with other craft. There the presumption is that the thing would not have happened but for some negligence in mooring

the barge. This presumption may, however, be overcome by proof of inevitable accident arising, for instance, from a vis major, as a flood or ice floe, against which no precaution could have prevented that which followed. It is very clear to us that the accident in this case was not of a nature that admits of any presumption of negligence. Negligence in this case, if any existed, must be proved, and must be proved as charged, to warrant recovery. The negligence with which the claimant charged the petitioner was its failure to provide the decedent with a reasonably safe place in which to work and with reasonably safe working appliances. As there was no proof of negligence with reference to unsafe appliances, the sole question, generally stated, was, whether the place in which the decedent worked was reasonably safe, and, particularly stated, whether the log rail of the lighter, from which the cap rail was torn, was sound or rotten. There was just one witness who testified for the claimant on this issue. He qualified as an expert lighter builder, and in response to a hypothetical question embracing the undisputed facts of the case, testified, that in his opinion the cap rail would not have been displaced by the strap if the log rail had been sound; though, later on cross-examination, he weakened the force of this testimony by admitting that a taut line as distinguished from a slack line could tear a cap rail from a perfectly sound log rail and that he had seen the thing done.

The horizontal cap rail was beveled on its edge and overhung the vertical log rail a distance no greater than the diameter of the bevel, which was slightly less than the diameter of the strands of the strap. The learned trial judge seemed impressed by what he conceived to be the physical impossibility of a line of the size of the one used catching under the limited beveled projection of the cap rail and wrenching it off. We have been similarly impressed; but the uncontroverted fact is that the line did something to the cap rail. It may or it may not have caught under it. Be that as it may, it did tear it off, and with a force sufficient to send it flying through the air. We think, however, this was explained by another witness who testified to what is familiar to all of us, which is, that when a slack line is suddenly made taut, it bounds from its slackened position to its taut position with great force and is capable of doing great injury. In this case, one end of the line was fast to a stationary tug of the dead weight of 200 tons, and the other end was fast to a moving lighter which with her cargo was of a dead weight of 450 tons. Manifestly, the resultant strain on the line was great. When the line yielded to the strain and jumped to its taut position it did it with a blow, or, as the witness said, with a "slam," the force of which when exerted by such a great moving weight must have been tremendous. We can imagine that such a blow from the line would alone and without the line being caught beneath the projection force the cap rail from its fastening, just as a blow of a hammer or ram would tear it away. But we are not concerned with the manner in which the cap rail was torn from its place. We are concerned with the reason for its giving way. The fact is it was torn away. The point of inquiry, therefore, is, was it torn away because of negligence of the petitioner in having it

fastened to a rotten log rail? The answer to this question, we think, dispenses with discussion of the defense of contributory negligence, and of inevitable accident, for if the log rail was sound, no negligence of the petitioner was proved.

Against the testimony of the expert that the log rail was rotten because the cap rail yielded to the blow of the line, and because also the spikes were but slightly bent—a phase of his testimony to which we give little weight—there is affirmative testimony on behalf of the petitioner that the lighter had been rebuilt but two or three months before the accident and that the log rail of the lighter had been renewed and made of sound timber. There was also testimony that the log rail was examined within forty-eight hours after the accident and was found to be perfectly sound. This is fact testimony of eye witnesses opposed to opinion testimony of an expert, and it should, we think, prevail, especially as the credibility of the witnesses so testifying was not impeached. As the log rail on the lighter at the time of the accident was on the lighter at the time of the trial, it was easily within the power of the claimant, if the rail was rotten, affirmatively and positively to prove that fact.

Slow as an appellate court always is to disturb facts found by a trial judge who has seen and heard the witnesses, we are constrained in this case to make opposite findings and to hold that the claimant has not proved that the decedent's death was due to the petitioner's negligence.

The decree below is reversed.