## HUASTECA PETROLEUM CO. v. CIA. DE NAVEGACAO LLOYD BRASI-LEIRO, and three other cases.

(District Court, E. D. New York. January 12, 1924.)

**Shipping ⬠209(1)—Court not required to vacate writs of foreign attachment and arrest until termination of proceedings for limitation of liability; "cease."**

Under Rev. St. §§ 4282–4285 (Comp. St. §§ 8020–8023), relating to limitation of liability of owner of vessel to owner's interest therein, the court, on owner's transfer of interest to a trustee under such statute and admiralty rule 51, after writs of foreign attachment and arrest have been issued, prior to issuance of monition and injunction, will not vacate such writs and dismiss proceedings, but will merely stay proceedings pending the determination of proceedings for limitation of liability, since the word "cease" means merely a cessation of activity, and since the proceedings for limitation of liability may not result in favor of owner.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cease.]

In Admiralty. Libels by the Huasteca Petroleum Company, owner of the wrecking steamer St. Heliers, by the Merritt-Chapman & Scott Corporation, owner of the wrecking steamer Warbler, by Westfeldt Bros. and others, and by Sprague-Warner and others against the Cia. de Navegacao Lloyd Brasileiro. On respondent's motion to vacate writs of foreign attachment and to dismiss the libels for want of jurisdiction. Motion to vacate writs of foreign attachment and arrest denied. Further proceedings stayed pending the determination of proceedings for limitation of liability.

Burlingham, Veeder, Masten & Fearey, of New York City, for libelants Huasteca Petroleum Co. and Merritt-Chapman & Scott Corporation.

Bigham, Englar & Jones, D. Roger Englar, Geo. E. Hargrave, and Henry N. Longley, all of New York City, for libelants Westfeldt Bros. and others and Sprague-Warner and others.

Purrington & McConnell, of New York City, appearing specially for the release of the steamships Pocone and Alegrete, and for no other purpose.

CAMPBELL, District Judge. This is a motion by the respondent on an order obtained by it directing the several libelants to show cause—

"why an order should not be entered herein vacating and dismissing the several writs of foreign attachment and of arrest heretofore issued out of this court, and staying all proceedings in the said actions against the respondent herein and the vessels attached, and all other property and moneys within the Eastern District of New York, belonging to the respondent, or its agents, and releasing said steamships Pocone and Alegrete from said process of attachment issued out of this court and dismissing the libels herein for want of jurisdiction of this court."

It is opposed by the libelants, who admit that they are stayed from taking any further proceedings pending the entry of the final decree in the proceedings to limit respondent's liability, but contend that they are entitled to retain the security which they acquired by foreign at-

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tachment before the issuance of the injunction in such limitation of liability proceeding.

A brief statement of the several suits, necessary for consideration in the matter at bar, and the various steps taken therein, especially with reference to the time of the happening thereof, is necessary for a proper understanding of the conflicting contentions of the parties and is as follows:

Under date of December 1, 1923, libel in the name of David G. Evans Coffee Company et al. v. Steamship Pelotas, and libel in the name of David G. Evans Coffee Company et al. v. Companhia de Navegacao Lloyd Brasileiro, the respondent, each in the sum of $1,-000,000, were filed in the United States District Court for the Eastern District of Louisiana. Under process issued in the first-mentioned libel, the steamship Pelotas was seized by the marshal for the Eastern district of Louisiana.

On December 1, 1923, libel in the name of Huasteca Petroleum Company against the respondent for salvage in the sum of $100,000 was filed in this court and process of foreign attachment was issued thereunder and the steamship Pocone was seized by the marshal of this district on the same day.

On December 1, 1923, libel in the name of Merritt-Chapman & Scott Corporation against the respondent for salvage in the sum of $50,000 was filed in this court and process of foreign attachment was issued thereunder, and the steamship Pocone was seized by the marshal of this district on the same day.

On December 5, 1923, the respondent filed a petition for limitation of its liability in the United States District Court for the Eastern District of Louisiana. No stipulation for any alleged value of the steamship Pelotas was filed at that time, nor was any surrender made or offered to be made of the steamship Pelotas and her pending freight to a trustee.

The court appointed appraisers to ascertain the value of the vessel, and the appraisers filed their report on December 6, 1923.

Under date of December 8, 1923. libel in the name of Westfeldt Bros. et al. against the respondent was filed in this court alleging damages in the sum of $500,000, and a writ of foreign attachment was issued, and by virtue thereof the marshal seized the steamship Pocone and the steamship Alegrete.

The first-named steamship was attached by the marshal under this process on December 8, 1923, and the steamship Alegrete was attached under this process about 10 a. m. on December 12, 1923.

On the morning of December 12, 1923, libel in the name of Sprague-Warner & Co. et al. against the respondent, alleging damage in the sum of $300,000, was filed in this court, and process of foreign attachment was issued thereunder, and the steamship Alegrete was seized by the marshal of this court at about 10 a. m. on the same day.

On the morning of December 12, 1923, the said respondent as petitioner moved in the United States District Court for the Eastern District of Louisiana for the appointment of a trustee; the court appointed a trustee; the petitioner assigned its interest in the steamship Pelotas to the trustee, together with certain freights alleged to be due. The

court thereupon issued monition and injunction in the form ordinarily employed in limitation proceedings. The monition and injunction were signed by the judge of said court between 10 and 11 a. m., on the morning of December 12, 1923, at New Orleans, La., and filed in the clerk's office of said court shortly before 11 o'clock on that day.

There is a difference in time of one hour between Brooklyn, N. Y., and New Orleans, La., and therefore the attachment in this district of the steamship Alegrete was effected at least one hour before the monition and injunction were issued by the court at New Orleans. The steamship Pocone had been attached several days prior thereto.

So much of the statute as is necessary for consideration in the case at bar reads as follows:

Section 4282, R. S. (Comp. St. § 8020):

"No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

Section 4283, R. S. (section 8021):

"The liability of the owner of any vessel, for any embezzlement, loss, or destruction, by any person, of any property, goods, or merchandise, shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, lost (loss), damage, or forfeiture, done, occasioned, or incurred without the privity, or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner in such vessel and her freight then pending."

Section 4284, R. S. (section 8022):

"Whenever any such embezzlement, loss, or destruction is suffered by several freighters or owners of goods, wares, merchandise, or any property whatever, on the same voyage, and the whole value of the vessel, and her freight for the voyage, is not sufficient to make compensation to each of them, they shall receive compensation from the owner of the vessel in proportion to their respective losses; and for that purpose the freighters and [owner] [owners] of the property, and the owner of the vessel, or any of them, may take the appropriate proceedings in any court, for the purpose of apportioning the sum for which the owner of the vessel may be liable among the parties entitled thereto."

Section 4285, R. S. (section 8023):

"It shall be deemed a sufficient compliance on the part of such owner with the requirements of this title relating to his liability for any embezzlement, loss, or destruction of any property, goods, or merchandise, if he shall transfer his interest in such vessel and freight, for the benefit of such claimants, to a trustee, to be appointed by any court of competent jurisdiction, to act as such trustee for the person who may prove to be legally entitled thereto; from and after which transfer, all claims and proceedings against the owner shall cease."

Respondent contends that by the use of the word "cease" in the statute and in Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, at page 600, 3 Sup. Ct. 379, 617, 27 L. Ed. 1038, it was intended that all actions should be dismissed and attachments similar to those in the instant cases vacated on the issuing of the monition and injunction. This does not seem to me to be its meaning, because, while it is true that "cease" is defined in the dictionary to mean "to stop, to put an

end to," it is generally used to indicate cessation of activity rather than to describe an activity in opposition to that then existing; and that is exactly as I construe it—all activity by way of further proceedings in the instant actions must stop until final decree in the limitation of liability proceeding.

To do more than this would be to give to the word "cease" the meaning of "vacate and dismiss," and, instead of stopping only, it would destroy a right already acquired.

Respondent, as I understand it, also contends that, by refusing to vacate the attachments, further proceedings are being taken as the continuing attachments are further proceedings in themselves. I cannot agree with this contention, as the proceedings were the granting of the writs and the arrests thereunder, and I have seen no authority which holds that mere retention of property arrested or levied upon constitutes taking further proceedings; on the contrary, so long as the property in the marshal's hands before the issuance of the injunction is retained, it merely constitutes maintaining the status quo.

The libelants herein had a right to take such action as they deemed proper for their protection until the injunction order was issued, and were in no sense stayed by the filing of the petition for limitation of liability or until injunction was issued after the giving of the required stipulation by the petitioner or the surrender of the vessel. Norwich Company v. Wright, 80 U. S. (13 Wall.) 104, 20 L. Ed. 585; City of Norwich, 118 U. S. 468 at pages 493 and 502, 6 Sup. Ct. 1150, 30 L. Ed. 134.

So much of admiralty rule 51 as is necessary for consideration in the instant case reads as follows:

"* * * Having caused due appraisement to be had of the amount or value of the interest of said owner or owners, respectively, in such ship or vessel, and her freight for the voyage, shall make an order for the payment of same into court, or for the giving of a stipulation with sufficient sureties or an approved corporate surety for the payment thereof into court * * * or if said owner or owners shall so elect, the said court shall, without such appraisement, make an order for the transfer by him or them of his or their interest in such vessel and freight to a trustee to be appointed by the court under the fourth section of said act; and, upon compliance with such order, the said court shall issue a monition against all persons claiming damages, * * * and the said court shall also, on the application of the said owner or owners, make an order to restrain the further prosecution of all and any suit or suits against said owner or owners in respect to any such claim or claims."

As hereinbefore shown, the attachment of the steamship Pocone had been effected some days before, and the attachment of the steamship Alegrete had been effected at least one hour before the surrender of the vessel to the trustee in New Orleans had been effected and the injunction issued.

The injunction as issued is in the form commonly followed, and, after directing the issuance and service of a monition, it was also ordered:

"That the further prosecution of the actions of David G. Evans Coffee Company * * * (et al.) * * * be, and the further prosecution of said suits are, hereby restrained; and the further prosecution of the still further action now pending in the United States District Court for the South-

ern District of New York on the same cause of action against petitioners, * * * and the prosecution of the still further suit entitled Westfeldt Bros. et al. versus Companhia de Navegacao Lloyd Brasileiro, pending in the United States District Court for the Southern District of New York; and the prosecution ,of any and all other libels, suits, actions, and proceedings of any nature or description against the said steamship Pelotas or the said Companhia de Navegacao Lloyd Brasileiro * * * be, and the same hereby is, restrained."

Respondent contends that the attachment effected before the issuance of the injunction should be vacated and the libels dismissed, but I cannot agree with that contention because, as has been hereinbefore shown, the libelants had a right to take such proceedings as they deemed proper until the giving of the stipulation for value or the surrender of the vessel and the issuance of the monition and injunction.

It cannot be questioned that libelants have had no right to take any further proceedings since the issuance of the injunction, nor have they taken any proceedings since that time. The injunction as issued only stayed the further prosecution of these actions, and that was all the court had power to do under the statute.

In Norwich Co. v. Wright, supra, at page 125 (20 L. Ed. 585), the court said that the order should issue "to restrain further prosecution of the suit."

In The Benefactor, 103 U. S. 239, at page 249 (26 L. Ed. 351), the court said:

"A question has been made whether, under our decisions in these cases, proceedings ought to be stayed on the decree of the respondents against the steamship Benefactor, her claimants and stipulators, until the determination of the proceedings on the petition for limited liability. We have no hesitation in saying that they ought to be so stayed."

In Providence & N. Y. S. S. Co. v. Hill Mfg. Co., supra, a state court allowed an action to proceed and rendered final judgment after the final decree had been entered in the proper United States District Court allowing limitation of liability. At page 601 (3 Sup. Ct. 394) the court said:

"It was the duty of the court, as well when the proceedings pending in the District Court were pleaded and verified by profert of the record, as when the decree of said court was pleaded and proved, to have obeyed the injunction of the act of Congress, which declared that 'all claims and proceedings shall cease.' When the plea only showed that proceedings for limited liability were pending and undetermined in the District Court, probably a stay of proceedings was all that the defendants could require; but when they set up and produced the final decree of that court, forever debarring the plaintiffs from prosecuting any claim for damages, they were entitled either to a verdict and judgment in their favor, or to a dismissal of the proceedings."

In The San Pedro, 223 U. S. 365, 32 Sup. Ct. 275, 56 L. Ed. 473, Ann. Cas. 1913D, 1221, the court said, at page 372:

"It was then the duty of every other court, federal or state, to stop all further proceedings in separate suits upon claims to which the limited liability act applied."

In re Norwich & New York Transportation Company, 18 Fed. Cas. 436, No. 10360 (a case in this district in 1875), decided before Providence & N. Y. S. S. Co. v. Hill Mfg. Co., supra, a vessel was

libeled in rem and a stipulation for value was taken and the vessel released. Thereafter a petition for limitation of liability was filed and a stipulation for the value of the vessel at the end of her voyage was filed. The court said, at page 437:

"It proves a great convenience to parties to be able to give such a stipulation for value under the admiralty rules, and thus obtain immediate possession of the vessel, although it be intended afterwards to take proceedings to obtain the benefit of the statute. A stipulation so given holds good, until the actions in which it was given are made ineffectual by means of proceedings taken under the statute, which proceedings, when concluded, afford foundation for the discharge of the stipulation for value."

In P. Lorillard & Co. v. National Steam Navigation Company of Greece (Eastern District of New York, 1916) a libel in personam was filed and writ of foreign attachment was issued, under which the steamship Patris was attached. Thereafter, bond to release attachment was filed and the vessel sailed. Shortly thereafter the owner of the vessel filed a petition for limitation of liability in the Southern District of New York, and the usual monition and injunction issued. The respondent in the first libel then filed motion for an order canceling the stipulation for value filed for the release of the steamship Patris, on the ground that the libel for damages was merged in the limitation proceedings, and that the bond to release attachment no longer served any purpose. Full argument was had before the court, and both sides filed briefs, now in the records of this court. Judge Veeder merely made entry of "Motion denied," under date of February 2, 1916, and the stipulation for value remained in full force until the limitation proceedings were concluded.

Respondent claims that this court cannot continue these actions without violating the statute.

There is no claim made by any one, nor could such a claim be sustained if made, that this court can entertain any new action, but what does the respondent mean by "continue these actions"?

Of course no further proceedings can be taken in these actions until there is a determination of the limitation of liability proceedings, but we must not lose sight of the fact that the right to limit liability is not gained merely by filing the petition and either giving the stipulation or making surrender of the vessel and freight, but the right to limit may be determined by a trial.

This is clearly expressed in Providence & N. Y. S. S. Co. v. Hill Mfg. Co., supra, at page 595 (3 Sup. Ct. 390), where the court said:

"But the very object of proceedings for limited liability is to inquire and determine whether the parties ought to be sued at all in any other tribunal after giving up, or submitting to pay the value of, all their interest in the ship and freight."

This does not seem to me to show that anything more is required than that further proceedings be stayed until final determination of those proceedings, because in the succeeding paragraph of the opinion in that case the court shows the reason why there should be no further proceedings in any other court pending the determination of the proceedings to limit liability, and at page 595 (3 Sup. Ct. 390) says:

"Besides, it is obvious on the face of the thing that proceedings for limited liability cannot be participated in by two jurisdictions, without interference and conflict between them, and cannot have any useful effect if a different court may inquire into and decide the same question, and execute a separate judgment independent of, and perhaps contrary to, that of the court to which the inquiry properly belongs. Such a state of things would utterly defeat the purpose of the law. The judgment in one court would annul or render nugatory that of the other."

Again at page 599. (3 Sup. Ct. 393) the court says:

"Proceedings under the act having been duly instituted in this court, it acquired full jurisdiction of the subject-matter, and having taken such jurisdiction, and procured control of the vessel and freight (or their value), constituting the fund to be distributed, and issued its monition to all parties to appear and present their claims, it became the duty of all courts before which any of such claims were prosecuted, upon being properly certified of the proceedings, to suspend further action upon said claims."

This does not mean that the action be dismissed and the security destroyed because the word "suspend" is defined in the dictionary "to cause to cease for a time, hold back temporarily from operation, interrupt, intermit, stay;" "to hold in state of indecision or indetermination as to suspend judgment."

It is true that the court in that case, at page 587 (3 Sup. Ct. 385), said:

"The principal question in this case is whether the institution of proceedings in the District Court of the United States, under the Act of 1851, for procuring a decree of limited liability of the owners of the Oceanus (the defendants in the present action), for the losses and injuries to goods on board of the vessel, superseded the prosecution of claims for the same losses and injuries in other courts. It seems to us that this must be the necessary effect of such proceedings, and that this results as well from the language of the law, as from its object and purpose."

Respondent contends that by the use of the word "supersede" the court meant that the action was to be annulled and set aside, but a careful reading of the whole opinion shows that what the court meant was that, for the determination of the question of whether limitation of liability was to be allowed, the court in which the petition was filed was to supersede all other courts, as the question could not be litigated in more than one court at the same time, and, if limitation of liability was allowed, it would supersede all other courts in the determination of claims to the fund; but, if limitation of liability was not allowed, there would be no reason for preventing the prosecution of other actions.

In the same case the court, at page 595 (3 Sup. Ct. 390), said:

"Whilst in the ordinary cases, where a limited liability to some extent exists but to an amount less than the aggregate claims for damages, so as to require a concourse of claimants and a pro rata distribution, the prosecution of separate suits, if allowed to proceed, would result in a subversion of the whole object and scheme of the statute. The questions to be settled by the statutory proceedings being, first, whether the ship or its owners are liable at all (if that point is contested and has not been decided), and, secondly, if liable, whether the owners are entitled to a limitation of liability, must necessarily be decided by the District Court having jurisdiction of the case; and, to render its decision conclusive, it must have entire control of the subject to the exclusion of other courts and jurisdictions. If another court may investigate the same questions at the same time, it may come to a conclusion contrary to that of the District Court; and, if it does (as

happened in this case), the proceedings in the District Court will be thwarted and rendered ineffective to secure to the shipowners the benefit of the statute."

Respondent cited Societe Napthes Transports v. Bisso Towboat Company, 241 Fed. 463, 154 C. C. A. 295, and it is true that the court suggested that the limitation proceedings superseded other actions brought to recover for the loss or damage, but the court cited, as its authority for this proposition, Providence & N. Y. S. S. Co. v. Hill Mfg. Co., supra, in which we have considered what the Supreme Court meant by the use of the word "supersede," and Monongahela River Consolidated Coal & Coke Co. v. Hurst, 200 Fed. 711, 119 C. C. A. 127, in which case, as I read it, the court gave the injunction the effect of a stay.

The Bisso Case, supra, seems to me to be clearly distinguishable from the cases at bar, because in that case, which was for a collision, there seems to have been no question but that limitation of liability would be allowed, and surely the court did not in that case hold that the prior action should be dismissed because that action had been consolidated with the limitation proceeding for trial by the District Court.

The District Court did cancel the bond for $75,000 given in the first action, but, as libelant's action was consolidated with the limitation proceeding, and both dealt with the same res, the court may have felt that the libelant was not entitled to double security, a bond for $55,-000, the value of the res, having been given in the proceedings to limit liability, and canceled the first bond, leaving the value of the res as its security.

Respondent also cited In re Whitelaw (D. C.) 71 Fed. 733, as authority for the proposition that the limitation proceedings supersede all other suits, but this statement is made on authority of Providence & N. Y. S. S. Co. v. Hill Mfg. Co., supra, and we have already considered what the court meant by that statement.

Reference is made by the respondent to the decision of Judge Choate in Re Long Island, etc., Transportation Company (D. C.) 5 Fed. 599, which was decided before the Hill Mfg. Co. Case, but I do not find that decision supports respondent's contention, because at page 602 the court said:

"Upon filing the petition a trustee was appointed, to whom the wreck was transferred, a monition as prayed for was issued, and an order was made restraining the prosecution of suits pending this proceeding."

The case of Seese's Adm'x v. Monongahela River Consolidated Coal & Coke Company (C. C.) 155 Fed. 507, cited by respondent, does not seem to me to support respondent's contention, because in that case the action was commenced after the usual monition and injunction were issued in a limitation proceeding, and of course the court decided that the action must be dismissed.

The respondent also cites Benedict on Admiralty (4th Ed.) p. 377:

"There would rarely seem to be any necessity for such haste in the issuing of the injunction, since, whenever it does issue, it will set aside the attachment of a sheriff or stay an action about to be brought to trial in a state court. * * *"

To support this statement, the author cites in the footnote Providence & N. Y. S. S. Co. v. Hill Mfg. Co., supra, and In re Whitelaw, supra.

These cases are authority for the statement relating to a stay of an action in a state court, but I cannot find them to be authority for the statement that the injunction "will set aside the attachment of a sheriff" unless the property attached be the res to be surrendered in the limitation proceeding, in which event it is correct and in harmony with the Bisso decision; but in any event it has no bearing on the instant case.

Respondent urges that all sufferers in the common disaster shall be put upon an equality, shall submit their claims to the court where the vessel lies, and share equally in the statutory liability, to the end that multiplicity of suits and conflicts be obviated.

All of this will be accomplished by staying further proceedings in the instant suits until the limitation proceedings are terminated by a decree.

If the limitation of liability of the respondent be decreed, the instant suits will of course be dismissed, but, if the limitation of liability be denied, what will happen to these libelants if the security which they now have by the attachments has been vacated?

That the law is doubtful as to the procedure to be followed when the petition for limited liability is denied is pointed out by the Circuit Court of Appeals of this Circuit in the case of In re Oceanic Steam Navigation Co. (The Titanic), 204 Fed. 260, at page 261; 124 C. C. A. 352, 353, in which the court said:

"If the court should find the petitioner entitled to the benefit of the statute, the suits would end. If the court should deny the petitioner the benefit of the statute, and then assume exclusive jurisdiction to determine and enforce full liability, the suits would likewise end. It would be only in case the court should, after rejecting the application of the statute, find that it could not further proceed, or could proceed only co-ordinately with other tribunals, that the suits would be important."

This court cannot consider the questions of law or fact that may be presented in the limitation of liability proceeding, as they are questions which can be determined only by the court in which that proceeding is now pending, but this court is informed that the right to limit liability on the part of the respondent is not admitted, but on the contrary will be opposed.

The right to limit liability is dependent upon the respondent showing that the loss, damage, or injury was done, occasioned, or incurred without the privity or knowledge of the respondent, and, unless these be shown, the limitation will not be allowed.

What better right has the respondent to assume that the limitation will be allowed than the libelants have to assume that it will be denied, and, if it be denied after libelants are deprived of the security which they have acquired according to law, how can they regain their security?

If the attachments are not vacated, the respondent will not lose the property attached, if limitation of liability is allowed, because the attachments will then be vacated, but, if the attachments are vacated

and the limitation of liability is not allowed, the libelants will lose all the security they by diligence have acquired.

The meaning of a statute which would accomplish the foregoing result should be free from doubt, but I am unable so to read the statute providing for limitation of liability.

Respondent claims that the marshal, on December 12, 1923, released the two steamships that were under attachment and thereafter arrested the same; but this must be an erroneous claim, because it is denied by the marshal's deputy in open court on the day of the argument, and further because there does not appear on the records of this court, or in its clerk's office, any order for such release nor any stipulation permitting the release of said vessels or either of them at any time before the argument on said motion.

In my opinion the motion to vacate the writs of foreign attachment and arrest should be denied, but the libelants should be and are stayed from taking any further proceedings in said actions, brought in this district, pending the determination of the proceedings to limit the respondent's liability now pending in the United States District Court for the Eastern District of Louisiana, without costs.

Enter order on motion.