STEVENOT   v.   NORBERG et al.
No. 13393.

United States Court of Appeals
Ninth Circuit.
Feb. 16, 1954.

Orrick, Dahlquist, Neff & Herrington, Walter G. Olson, Sterling Carr, San Francisco, Cal., for appellant.

Pembroke Gochnauer, Rogers & Clark, San Francisco, Cal., for appellee.

Before STEPHENS and HEALY, Circuit Judges, and DRIVER, District Judge.

DRIVER, District Judge.

Appellant is the Trustee of Coastal Plywood and Timber Company, the Debtor in corporate reorganization proceedings, under Chapter X of the Bankruptcy Act, Title 11 U.S.C.A. § 501 et seq., and appellees are stockholder-employees of the Debtor. On December 28, 1951, appellant discharged appellees from their employment. Upon their petition, and after a contested hearing, the District Court, on February 15, 1952, entered an interlocutory order and, on May 12, 1952, a final order, directing that they be reinstated with back pay. Appellant reinstated them on February 18, 1952, but has not reimbursed them for loss of wages. The appeal covers both the interlocutory and the final orders.

The basic, pertinent facts are not in dispute. As found by the District Court, in its final order, they may be summarized as follows: For more than two years prior to December 28, 1951, each of the appellees had been regularly employed by the Debtor, a Nevada Corporation, which had its office and principal place of business at Cloverdale, California. Each of the appellees owned one share of Debtor's capital stock, purchased at the price of $2500. Three of them were Directors, and one such Director was President and another, Vice-President of the Corporation. At the time they purchased their stock, it was designated "Class A" stock. The Articles of Incorporation provided that only one share could be issued to or owned by any one stockholder and that the stockholder must be an active employee, or a person acceptable to the Board of Directors as a future employee of the Corporation.

An owner of Class A stock could not sell his one share without first giving the Corporation an exclusive option for a period of 60 days to purchase it at the "*bona fide* market value," as defined in the Articles. The Corporation had a like option to purchase the Class A stock of any holder who "voluntarily or involuntarily" ceased to be employed by the Corporation, by reason of discharge, retirement, or resignation. If the Corporation failed to exercise, or waived, its 60-day option, the stock could then be sold or transferred without restriction as to price, provided the transferee was an active employee holding no Class A stock, or a person acceptable to the Board of Directors as a future, active employee of the Corporation. The Articles of Incorporation further provided: "The specific provisions governing discharge, retirement, or disability [of Class A stockholder-employees] shall be set forth in the By-laws." [1]

---

1. The quoted provision, along with some other portions of the Articles of Incorporation, was printed on the reverse side of the stock certificates, issued to appellees.

The Articles of Incorporation have continued to include the foregoing provisions at all times material here, except that, by amendment, the designation of the shares, subject thereto as Class A, has been eliminated; and all the outstanding shares of Debtor Corporation have been made subject to such provisions.

At the time appellees purchased their stock, the By-laws of the Corporation, in Article V, Section 2, provided that a Class A stockholder-employee might not be discharged, except with the approval of a majority of the members of the Board of Directors, elected by the Class A stockholders [2] and subject to confirmation by a majoriy of the Class A stockholders.[3] But at that time, Article VIII of the By-laws specifically provided that Artice V, Section 2 "may be amended and shall only be amended by majority vote of the Class A stockholders." On September 10, 1950, the By-laws were duly amended by the prescribed method, by eliminating Article V, Section 2, relative to discharge of Class A stockholder-employees and substituting therefor a provision giving the General Manager supervision and direction of the business and affairs of the Corporation and the power to employ, suspend, and discharge "such agents and employees of the Corporation as he may, from time to time, deem necessary." The By-laws were so amended to satisfy the demands of the Bank of America and the Reconstruction Finance Corporation, which had financed Debtor's operations to the extent of some $2,600,000. The loan was in default, and Debtor was in need of an additional $500,000 to increase and improve its facilities and place its plant on a competitive basis with other mills. The two creditor institutions gave Debtor notice that they would not continue to extend their financial support, unless the By-laws were amended.

On November 1, 1951, appellant was appointed Trustee of the Debtor Corporation by an order which authorized and directed him "to conduct and operate the business of the Debtor" and "to employ and discharge and to fix, subject to the approval of the Court, the rate of compensation of all officers, managers, superintendents, agents, and employees." Subsequently, appellant qualified as such Trustee and an order was entered approving his retention. On December 28, 1951, acting through the General Manager, he terminated the employment of appellees with the Corporation.

The District Court concluded that appellees were discharged arbitrarily, without prior notice or warning, and without good cause; and that their discharge was in violation of their contract rights. It was the Court's position, as set out in the order of May 12, 1952, that the job-security provisions of the Articles of Incorporation and By-laws of the Debtor Corporation, as they existed at the time appellees purchased their stock, constituted valid and enforceable agreements between the Corporation and appellees; and that the amendment of the By-laws of September 10, 1950 was not intended to and did not impair or abrogate such agreements.

A controversy appears to have developed as to the scope of our review on this appeal. Appellees argue that, since they have been reinstated in their jobs as of February 18, 1952, the ap-

---

2. The Articles of Incorporation provided that the Class A stockholders were entitled to elect 9 of the 12 Directors.

3. Article V, Section 2 of the By-laws was as follows: "A Class 'A' stockholder-employee may not be discharged except with the approval of the majority of the members of the Board of Directors who are elected by the Class 'A' stockholders. If the Class 'A' stockholder so discharged is unwilling to accept the decision of said Directors, he may request in writing of the President, Vice-President, or Secretary, within ten (10) days of such decision, that his discharge be reviewed at a meeting of the Class 'A' stockholders called for the purpose, in accordance with the provisions of the By-laws. Unless a majority of the stockholders voting at such meeting approves such discharge, it shall not be effective.

peal from the portions of the orders directing their reinstatement has become moot, and the only issue remaining is the allowance of reimbursement for their loss of wages. We think there is a very real, subsisting controversy between the parties as to whether appellees had a contract right to continued job-tenure with Debtor Corporation. The reinstatement of appellees, in compliance with the Trial Court's interlocutory order, obviously, was, as appellant points out, a precautionary measure to stop the accumulation of possible damages against the Debtor. Such voluntary compliance does not constitute a partial abandonment of the appeal or render moot the question of the right of appellees to reinstatement.[4]

■ Passing now to consideration of the merits, the relation of appellees as stockholders to the Debtor Corporation was one of contract. The contract embodied the Corporate Charter, the Articles of Incorporation, the By-laws, and the pertinent statutes of the state of incorporation.[5] Such a contract lawfully may be altered by amendment of the Articles of Incorporation or By-laws in the manner therein specified, or as provided by statute, if no contract obligation or vested property right is thereby impaired or destroyed. In the instant case, the By-laws being an integral part of their contract with Debtor, appellees had the right to continue in their employment until discharged in the manner specified in Article V, Section

2. But Article VIII of the By-laws also was an integral part of the contract, just as much so as Article V; and Article VIII specifically provided that Article V, Section 2, could be amended by a majority vote of the Class A stockholders. The By-laws did not give appellees a contract right or a vested right to have Article V, Section 2, remain in force and effect indefinitely. The By-law amendment, adopted in the prescribed manner, on September 10, 1950, did not, therefore, impair or destroy any vested right of the appellees,[6] and the amendment was valid and effective. Nor do we think it is material what motive or purpose may have induced the stockholders to change the By-laws. The fact that the change was made to meet the requirements of the Corporation's bankers, who had lent it $2,600,000 and were faced with the prospect of having to advance $500,000 more, certainly would not render it invalid. The language of the amendment is clear, unequivocal, and unambiguous. No irregularity or fraud in its adoption is asserted. It cannot be held to have no force or effect, merely because of some mental reservation or unexpressed intention which the stockholders may have had when they adopted it.

■■ Appellees were not entitled to be reinstated in their jobs for another reason. Even if we assume that, in legal effect, they had a contract with Debtor Corporation, based upon the latter's By-laws, as they stood prior to the amend-

4. Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 43, 65 S.Ct. 11, 89 L.Ed. 29; and see also Jackson v. Denver Producing and Refining Co., 10 Cir., 96 F.2d 457; Boston & M. R. R. v. Bentubo, 1 Cir., 160 F.2d 326.

5. Schroeter v. Bartlett Syndicate Bldg. Corp., 8 Cal.2d 12, 63 P.2d 824, 825; De Mello v. Dairyman's Co-op. Creamery Co., 73 Cal.App.2d 746, 167 P.2d 226; Vulcan Corporation v. Westheimer & Co., Ohio App., 34 N.E.2d 278; Ellingwood v. Wolf's Head Refining Co., Del., 38 A.2d 743, 154 A.L.R. 406; Constructors

Ass'n of Western Penn. v. Furman, 165 Pa.Super. 248, 67 A.2d 590.

6. See Baldwin v. Miller & Lux, 152 Cal. 454, 92 P. 1030; Wilson v. Cherokee Drift Mining Co., 14 Cal.2d 56, 92 P.2d 802; Reynolds v. Supreme Council Royal Ancanum, 192 Mass. 150, 78 N.E. 129, 131; Murphy v. Nowak, 223 Ill. 301, 79 N.E. 112, 117; Hartford Accident & Indemnity Co. v. W. S. Dickey Mfg. Co., 26 Del.Ch. 411, 24 A.2d 315; Sovereign Camp W. O. W. v. Smith, 176 Okl. 545, 56 P.2d 408, 410–411; Hottenstein v. York Ice Machinery Corp., 3 Cir., 136 F.2d 944, 950.

ment, it was a contract for the rendering of personal services by appellees. Where a contract for personal services is a continuous one, which, possibly, may extend over a long period of time and calls for a succession of acts which cannot be performed in one transaction, it will not be specifically enforced.[7]

■■ Appellees argue that, whether or not they had enforceable contract rights to continued employment, the District Court, in the exercise of its supervisory power over its Trustee, properly ordered their reinstatement. In this connection, they remind us the Court found, in its final order, that restoration of appellees to their jobs would have no adverse or harmful effect upon the proper administration and preservation of Debtor's business and estate; but, "on the contrary, such reinstatement, with restitution of earnings lost by petitioners [appellees] by reason of said wrongful lay-off and discharge, will be for the best interests of the Debtor Company." Appellees argue that we are bound by the foregoing findings, since the record does not show that they are clearly erroneous. We do not think so. When a finding is essentially one dealing with the effect of certain transactions or events, rather than a finding which resolves disputed facts, an appellate court is not bound by the rule[8] that findings shall not be set aside, unless clearly erroneous, but is free to draw its own conclusions.[9] Moreover, the finding under discussion must be considered in connection with the District Court's assumption that the discharges were invalid, unauthorized, and in direct violation of the subsisting contract rights of the appellees.

■ A trustee, in Chapter X, reorganization proceedings, is an officer of the Court, subject to its supervision and control, it is true; but, for obvious reasons, ordinarily the supervision and control does not extend to day-to-day details (such as the hiring and firing of employees), where the Trustee is operating the going business of a debtor. Whether a District Court has the power so to extend its supervision, we are not called upon to decide in this case. In the order appointing him Trustee of the Debtor Corporation, appellant was directed to conduct and operate the business of the Debtor and was specifically and unequivocally authorized to employ and to discharge *all* employees of the Corporation. That authority, so far as the record shows, never has been withdrawn. When appellant, on December 28, 1951, discharged the appellees, he was acting within the scope of the unrevoked authority given to him in the appointing order. Even then, the District Court did not revoke the Trustee's broad authority and take over the direct, detailed supervision of the conduct of Debtor's business. On the contrary, the record clearly indicates that the orders reinstating appellees were based upon the conclusion that, in discharging them, appellant had violated their subsisting, enforceable, contract rights.

In view of our conclusions on the issues discussed above, it is not necessary for us to consider the other points argued by appellant.

Reversed.

---

7. Bethlehem Engineering Export Co. v. Christie, 2 Cir., 105 F.2d 933, 935; Bach v. Friden Calculating Machine Co., 6 Cir., 155 F.2d 361, 366; Moklofsky v. Moklofsky, 79 Cal.App.2d 259, 179 P.2d 628, 630–631; Lind v. Baker, 48 Cal.App.2d 234, 119 P.2d 806, 812–813; See also Civil Code of Calif. Sec. 3390, which, in part, provides: "The following obligations cannot be specifically enforced: 1. An obligation to render personal service;

2. An obligation to employ another in personal service".

8. Fed.Rules Civ.Proc. Rule 52(a), 28 U.S.C.A.

9. Brown v. Cowden Livestock Co., 9 Cir., 187 F.2d 1015, 1018; Plomb Tool Co. v. Sanger, 9 Cir., 193 F.2d 260, 264. See also St. Louis Union Trust Co. v. Finnegan, 8 Cir., 197 F.2d 565, 568.