The TEXAS COMPANY,
Claimant, Appellant,

v.

R. O'BRIEN & CO., Inc.,
Libelant, Appellee.

No. 5171.

United States Court of Appeals
First Circuit.

March 20, 1957.

Joseph F. Dolan, Boston, Mass., with whom Joseph M. Brush, New York City, was on brief, for appellant.

Seymour P. Edgerton, Boston, Mass., with whom Bingham, Dana & Gould, Boston, Mass., was on brief, for appellee.

Before WOODBURY and HARTIGAN, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge.

This is an appeal from a final decree of the District Court following the confirmation of an assessor's report on damages. Appellant appeared as claimant in a libel in admiralty brought by appellee, as owner of the trawler Lynn, against the S.S. Ventura. On

November 28, 1951, the Lynn was struck and sunk by the Ventura. This proceeding followed. After the District Court had determined that the Ventura was solely at fault, R. O'Brien & Co. v. S.S. Ventura, D.C.Mass.1954, 130 F. Supp. 176, affirmed sub nom. Texas Co. v. R. O'Brien & Co., 1 Cir., 1955, 225 F.2d 280, the question of damages was referred to an assessor. The assessor found that although the Lynn had been raised and re-commissioned, she was a constructive total loss. No criticism is made of this finding. Under this circumstance the normal measure of damages is the vessel's fair market value immediately before the sinking. Alaska S.S. Co. v. Inland Navigation Co., 9 Cir., 1914, 211 F. 840. The assessor found that there was no market value established. Appellant complains of this finding, and further contends that the assessor's determination of a value of $200,000 is clearly erroneous. Admiralty Rule 43½, 28 U.S.C.A., 1932, 286 U.S. 572; United States v. Kirkpatrick, 3 Cir., 1951, 186 F.2d 393; cf. The I. C. White, 4 Cir., 1924, 295 F. 593 ("substantial error").

The assessor found that at the time the Lynn was struck there was a "tight market" for fishing vessels, by which was meant many buyers, but few sellers. This condition lasted from 1951 to the spring of 1953. He found that ten sizable trawlers were sold in this area during that period, though as to one certain statistics were missing. These vessels varied in age, construction, and size. Some were smaller than the Lynn, some larger; some younger, and some older. Some were better than the Lynn in some respects, and not in others, while others exceeded the Lynn in other particulars. In various instances individual characteristics of these vessels were close to the Lynn's, but in none were they all close.

■ Comparable sales are normally "the best evidence of market value." Baetjer v. United States, 1 Cir., 1944, 143 F.2d 391, 397, certiorari denied, 1944, 323 U.S. 772, 65 S.Ct. 131, 89 L.

Ed. 618. Nor is the use of such evidence confined to where a layman can interpret it by inspection, or by the application of some mathematical formula. Dean v. Woods, Em.App., 1948, 169 F.2d 952. If the assessor was unable, unaided, to find the market value of the Lynn from these other sales, he should not then have proceeded, "failing market value," to quote his report, to determine worth on some other basis, citing The President Madison, 9 Cir., 1937, 91 F.2d 835, 845. This was a misconception. The Madison presented the exceptional case where, because of the special purpose and peculiarities of the vessel, what she would bring on the market would not fairly represent her true worth. In such event market value is not the test. Cf. United States v. Eastern S.S. Lines, Inc., 1 Cir., 1948, 171 F.2d 589. Obviously this rule is to be sparingly applied. The I. C. White, 4 Cir., 1924, 295 F. 593. It is the very reverse of the situation here, where the vessel was of popular design, with many buyers available. Under these circumstances she had a market value, and the sole endeavor should have been to determine what it was, not to have sought something else. This is not to say that other factors besides sales could not be regarded, but they should have been considered only insofar as they shed light upon this single objective.

It is not clear on what basis, or on what evidence, the assessor determined value. It was not on original cost, depreciated, as there was no evidence of such cost. It was not on reproduction cost, depreciated, because the assessor found that this figure lay between $180,000 and $228,000, and that it was not necessary to find it any more definitely. It was not on earnings. He "discarded earnings," as "too indefinite," and we agree with his action. It was not on hull insurance, as there was no evidence thereof. It was not on the opinion of the owner, as he expressly rejected it. This action, too, was clearly correct, since it was based upon earnings. It was not upon any expert opinion, because he found that even as to "the

most credible * * * I am not inclined to give it any weight."

While the testimony of an expert does not have to be accepted, if the assessor could not reach a conclusion from the sales he should not have rejected it without some reason. Cullers v. Commissioner of Internal Revenue, 8 Cir., 1956, 237 F.2d 611; Capitol-Barg Dry Cleaning Co. v. Commissioner of Internal Revenue, 6 Cir., 1942, 131 F.2d 712. However, we feel he did have reason. On the basis of their lack of qualifications, either general or particular, three of appellant's experts could easily be disregarded. Appellant's remaining expert, Barrie, had general qualifications. He had, also, special knowledge of the Lynn, having appraised her sister ship, the Triton, in 1952. That appraisal had been $185,000. The Triton had a one-year-old 500 horsepower engine (as against the Lynn's 350 h.p.), installed at a cost of $66,000, with $20,000 more spent on her for repairs. She was 15 years old, against the Lynn's 10. Barrie valued the Lynn at $140,000. If a 15 year old hull without engine or repairs was worth $100,000, possibly $140,000 for the same hull only 10 years old, with an engine, even if the Lynn's engine were of no great worth, might seem low. He made no attempt to explain this, or to show how his figure of $140,000 was to be reconciled with the $185,000 obtained for the smaller Rosalie D. Morse.

Appellee's expert, Allen, the assessor found the most credible. He valued the Lynn at "$200,000 to $225,000; over $200,000." Passing the fact that his opinion in 1951 had apparently been "around $200,000," and that he changed his testimony on the stand to say the vessel was worth $200,000 even in the admittedly soft market of 1948, we think his underlying basis was unsupported. He made his appraisal by computing reproduction cost, depreciated, and then adding a substantial amount to it because the market was tight. Reproduction costs were also high. Quite possibly they were even higher than market.

There was no evidence that other vessels were selling over their depreciated reproduction cost. Cost, either original or reproduction, may bear no relation to market value at any particular moment in an industry that fluctuates as this one. Cf. The I. C. White, 4 Cir., 1924, 295 F. 593.

Perhaps because of his misconception about market value, we think it clear that the assessor failed to give adequate weight to contemporary sales. The vessel most like the Lynn was the Rosalie D. Morse. She sold for the highest price of the ten, $185,000. She was 7 years old. Assuming a straight line depreciation of 5%, as testified to by appellee's expert, she was then 35% depreciated. Depreciating her for 3 more years, to bring her to the age of the Lynn, would reduce this figure to $142,000. On the other hand, the Lynn was 170 gross tons, as against the Morse's 153. Her fish-carrying capacity, though less than the Lynn's, was on a more favorable ratio to her tonnage. Increasing $142,000 proportionately to that ratio would result in $164,000. For an adequate comparison there must, however, be a deduction for the fact that the orphaned Lynn's engine presented a serious parts difficulty.

The Esther M. was also 7 years old. She was 250 gross tons, against the Lynn's 170, and had a 550 h.p. motor rather than 350. She brought $175,000. If that were depreciated for 3 more years, at 5%, it would mean, for this much larger boat, $135,000. It is true that this was a forced sale, for which some allowance should be made. The Carole June, with 400 h.p., had a gross tonnage slightly greater than the Rosalie D. Morse, but she carried 8% less fish. She sold for $123,000, when only 5 years old. The Batavia, a larger and more desirable hull than the Lynn, except for her age, but with a 10-year-old 600 h.p. engine, sold for $126,000. She needed some $20,000 spent on her. Even appellee's expert did not use this sale as justifying his valuation of the Lynn. Clearly, not even the most favorable of

the sales would warrant finding a market value of $200,000.

█ Since the decree must be reversed, the question arises as to what further action we should take. The older cases, without discussion of the weight to be accorded to the decision below, made their own findings of value. The Cushing, 2 Cir., 1923, 292 F. 560, affirmed sub nom. Standard Oil Co. of New Jersey v. Southern Pacific Co., 1925, 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890; The I. C. White, 4 Cir., 1924, 295 F. 593; Alaska S.S. Co. v. Inland Navigation Co., 9 Cir., 1914, 211 F. 840. Insofar as such action may have been bottomed on the principle that an admiralty appeal was a trial *de novo,* this is no longer law. The present admiralty rule is that findings are not to be reversed unless "clearly erroneous," comparable to Fed. Rules Civ.Proc. rule 52(a), 28 U.S.C.A., McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. Some courts have held Rule 52(a) not to apply where the findings below were based upon stipulated or undisputed subsidiary facts.[1] We have not. Collins v. Commissioner of Internal Revenue, 1 Cir., 1954, 216 F.2d 519. In our opinion Rule 52(a) unambiguously governs all findings, and its additional caveat, that due regard is to be given to the trial court's opportunity to judge credibility, is merely cautionary advice, not a variation in the scope of review. Cf. Galena Oaks Corp. v. Scofield, 5 Cir., 1954, 218 F.2d 217. We do not think the substantive

test, and possible success on appeal, whatever the nature of the case, should depend upon whether the evidence at the trial had been stipulated or contested. But once a finding has been determined to be clearly erroneous, different considerations apply to our subsequent action. Our disposition may quite properly depend upon the then state of the record. In such event, if all subsidiary facts have been already found, or stand admitted, there can be no need of sending the case back. Our acceptance of the assessor's special findings here gives us a record free of dispute except as to the ultimate factual inference to be drawn, and hence leaves us as fully able to draw it as would be the trial court. The test for reversibility does not require us to return the case for a new finding. Smith v. Dravo Corp., 7 Cir., 1953, 208 F.2d 388; see Yanish v. Barber, 9 Cir., 1956, 232 F.2d 939, 947.

In our opinion the market value of the Lynn at the time of the collision on the basis of the subsidiary findings below was $150,000.

A judgment will be entered vacating the order of the District Court and remanding the case to that Court for the entry of a decree in conformity with the views expressed in this opinion.

WOODBURY, Circuit Judge (dissenting).

I quite agree with Judge Aldrich's excellent analysis. My only disagreement is with the disposition made of

---

[1]. There is a singular lack of unanimity on this point, not only between, but within, individual circuits. The following are recent examples:

Court free to disregard ultimate findings when based upon written or undisputed evidence: Kraft Foods Co. v. Commissioner of Internal Revenue, 2 Cir., 1956, 232 F.2d 118; United States v. One 1950 Buick Sedan, 3 Cir., 1956, 231 F.2d 219 (court reaches result by indicating an ultimate "inference" is not a "finding of fact."); Seagrave Corp. v. Mount, 6 Cir., 1954, 212 F.2d 389; Chicago, Burlington & Quincy R. Co. v. United States, 7 Cir., 1955, 221 F.2d 811; Stevenot v. Norberg, 9 Cir., 1954, 210 F.2d 615.

Court cannot reverse such findings merely because it disagrees with them, but must conclude they are "clearly erroneous": Central Ry. Signal Co. v. Longden, 7 Cir., 1952, 194 F.2d 310; Coleman v. Sears, Roebuck & Co., 8 Cir., 1956, 238 F.2d 206; Hycon Manufacturing Co. v. H. Koch & Sons, 9 Cir., 1955, 219 F.2d 353, certiorari denied, 1955, 349 U.S. 953, 75 S.Ct. 881, 99 L.Ed. 1278; Kaye v. Smitherman, 10 Cir., 1955, 225 F.2d 583, certiorari denied, 1955, 350 U.S. 913, 76 S.Ct. 197, 100 L.Ed. 800; Bishop v. United States, 1955, 96 U.S.App.D.C. 117, 223 F.2d 582, judgment vacated and remanded, 1956, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 semble.

the case as a result of that analysis. It seems to me that on the state of the record we ought not to find the value of the Lynn ourselves but that instead we ought to remand the case to the District Court for it, after re-reference to an assessor or not as it may see fit, to consider the evidence in the record anew in the light of our opinion, and, on such reappraisal to exercise its fact finding function again by making an amended finding of value. See reasoning of L. Hand, in Petterson Lighterage & Towing Corp. v. New York Central R. Co., 2 Cir., 1942, 126 F.2d 992, 996. Compare, however: Stuart v. Alcoa S.S. Co., 2 Cir., 1944, 143 F.2d 178, 179; Porello v. United States, 2 Cir., 1946, 153 F.2d 605, 608; The Friendship II, 5 Cir., 1943, 135 F.2d 520, 521. See particularly Menefee v. W. R. Chamberlin Co., 9 Cir., 1950, 183 F.2d 720. But note Bone, J., dissenting, Id., 183 F.2d at page 723.