Shawn CODY, Plaintiff,

v.

**PHIL'S TOWING COMPANY,**
Defendant.

No. 00–1699.

United States District Court,
W.D. Pennsylvania.

Sept. 11, 2002.

Dennis M. O'Bryan, Howard M. Cohen, O'Bryan Baun Cohen, Birmingham, MI, for Plaintiff.

Leonard Fornella, Esq., Heintzman, Warren, Wise & Fornella, Pittsburgh, PA, for Defendant.

## OPINION

DIAMOND, District Judge.

Presently before the court are plaintiff's motion for leave to file an amended complaint adding Ohio River Company as a defendant "for purposes of the limitation fund only" in conjunction with defendant's affirmative defense under the Limitation of Shipowners' Liability Act of 1851, 46 App.U.S.C. §§ 181–189, and a number of other pretrial motions related to that defense. For the reasons set forth below, plaintiff's motion for leave will be granted and the related motions will be resolved in accordance with this opinion.

Plaintiff commenced this action under the Jones Act, 47 App.U.S.C. § 688 *et seq.*, and the General Admiralty and Maritime Laws of the United States, seeking redress for injuries sustained to his left lower extremity as the result of an accident on the Ohio River on May 21, 2000. At that time plaintiff was working for defendant as a deckhand aboard the vessel known as the *M/V Bonnie J. Johnson.* Phil Johnson, Jr., was the pilot of the vessel. Plaintiff and the pilot were the only individuals aboard the *M/V Bonnie J. Johnson.* At approximately 6:45 p.m., plaintiff's left foot was crushed between two barges. Plaintiff's second toe on his left foot subse-

quently was amputated and he has been under a doctor's care and not worked since the accident. Plaintiff has developed reflex sympathetic dystrophy (also known as complex regional pain syndrome) and continues to experience reduced mobility. In addition to maintenance and cure, he seeks an award for lost past and future earnings and pain and suffering in amount of approximately $1,500,000.00.

The parties have completed discovery, submitted their pretrial materials and a pretrial settlement conference was held on April 30, 2002. Shortly before the pretrial conference plaintiff moved to strike defendant's tenth affirmative defense, which raises the doctrine of limitation of liability. The court indicated at the conference that while it would give the matter additional consideration, it was not inclined to grant the motion. Thereafter, plaintiff filed a number of motions that pertain to the Act. These motions implicitly raise questions concerning the proper procedures to be employed in pursuing a limitation of liability defense under the circumstances presented.

The central provision of the Act provides:

> The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

46 U.S.C.App. § 183(a). Congress passed the Limitation Act in 1851 to encourage shipbuilding and to induce investment in the shipping industry. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 447, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001) (citations omitted). The Act was designed to enable American shipping to stand on equal footing with that of other maritime nations who had their own limitation acts. *Id.*

"The Act is not a model of clarity." *Id.* Although Congress created a right to seek limited liability through the Act, it did not establish any procedures for determining the entitlement. *Id.* As a result the Supreme Court developed procedures to govern a limitation proceeding and promulgated them in the form of Supplement Rules of Practice in Admiralty.[1] In *Lewis*, the Supreme Court summarized these rules as follows:

> The 1872 rules were "intended to facilitate the proceedings of the owners of vessels for claiming the limitation of liability secured by the statute." *The Benefactor*, 103 U.S. 239, 13 Otto 239, 26 L.Ed. 351 (1880). Under the rules, a vessel owner seeking limitation of liability had to file a petition. The district court would obtain an appraisal of the vessel's value or the owner's interest in the vessel, and ensure that payment or some guarantee of payment was deposited with the court. The court would then order all claimants to appear. Supplementary Rule of Practice in Admiralty 54, 13 Wall. at xii-xiii. In the process of seeking limited liability, the owner was permitted to contest the fact of liability. Rule 56, 13 Wall. at xiii. The ability to contest liability relieved the vessel owners of the "very onerous" English rule, which required vessel owners to confess liability in order to seek the benefit of limitation. *The Benefactor, supra*, at 243, 103 U.S. 239.... The claimant

---

1. These rules were adopted in 1872.

would then contest the vessel owner's claims for exoneration and limitation of liability. If the owner succeeded in its effort to limit liability, but was not exonerated, the court was responsible for distributing the fund deposited in the court among the claimants.

*Lewis,* 531 U.S. at 448, 121 S.Ct. 993.

Modern practice under the Limitation of Liability Act is substantially similar to the procedure mandated by the 1872 rules. In *Lewis,* the Supreme Court also summarized today's practice in this area:

> The procedure for a limitation action is now found in supplemental admiralty and maritime claims Rule F. Much like its predecessor provisions, Rule F sets forth the process for filing a complaint seeking exoneration from, or limitation of, liability. The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Id.*

Although a limitation proceeding commonly is commenced as a separate action by the filing of a petition, invocation of the statutory rights created by the Act also can be accomplished through a plea of limited liability asserted in the answer to a plaintiff's complaint. *The Chickie,* 141 F.2d 80, 85 (3d Cir.1944) ("the 1936 amendments did not abolish the right of a shipowner to plead limitation in his answer;"). In such situations the six-month time limitation set forth in 46 App.U.S.C. § 185 and Supplemental Rule F is not applicable and the defense may be maintained as long as the answer was timely. *Id.*

■ Although defendant has invoked its rights under the Act by way of an affirmative defense in its answer, the court will mandate the use of a procedure similar to that in Supplemental Rule F in adjudicating defendant's statutory defense. Defendant will be ordered to file a pleading setting forth all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited. *See* Supplemental Rule of Civil Procedure F(2). The pleading shall include all facts necessary to ascertain the value of the vessel at the close of the voyage during which plaintiff was injured. It also shall identify the amount of any pending freight on the vessel at that time. To the extent plaintiff disagrees with any fact set forth in defendant's filing, plaintiff may file a responsive pleading indicating his disagreement and the grounds therefor. A brief period of additional discovery will then be permitted on any issue joined by the pleadings. In the event the jury returns a verdict on plaintiff's Jones Act and unseaworthiness claims that exceeds the value defendant seeks to establish for the *M/V Bonnie J. Johnson,* then the court will decide all remaining questions of fact and law necessary to adjudicate defendant's limitation of liability defense.[2]

---

**2.** The court's authority to postpone the disposition of the limitation of liability proceeding until after the plaintiff's claims have been liquidated and found to exceed the amount of the claimed limitation of liability fund has long been recognized. *See* Vol. 3, *Benedict on Admiralty* at § 12; *Complaint of Great Lakes Dredge & Dock Co.,* 895 F.Supp. 604 (S.D.N.Y. 1995) (retaining for subsequent determination issues exclusive to Limitation of Liability Act and proceeding with jury trial on claims of personal injury and death and apportionment of fault between claimants and vessel owners); *Complaint of Consolidation Coal Co.,* 123 F.3d 126, 129 (3d Cir.1997) (in single

Plaintiff seeks leave to amend his complaint in order to add Ohio River Company, the owner of the barge lashed to the tug at the time of plaintiff's injury, on the ground that the barge should be considered an offending vessel for the purpose of the limitation fund. Plaintiff specifically moves to add Ohio River "as a defendant for the purposes of the limitation fund only." Plaintiff's Motion for Leave (Document No. 31) at p. 1. Plaintiff argues that a barge may be named as an offending vessel for inclusion in a limitation fund where a crew member is on the barge, directions are relayed from the barge to the tug and the barge is the injury-causing vessel, and cites *In the Matter of Seaspan Int'l, Ltd.,* 172 F.Supp.2d 1314, 1318–19 (W.D.Wash. 2001), in support.

Defendant, Phil's Towing Company, vigorously opposes plaintiff's motion for leave to add Ohio River, contending that (1) the lack of common ownership of the *M/V Bonnie J. Johnson* and the barge precludes joinder under the "flotilla rule" commonly applied to a group of vessels, (2) the barge was purely a passive instrumentality in the operation resulting in plaintiff's injuries and (3) the record contains no basis to assign fault to the barge except for plaintiff's own contributory negligence, which plaintiff denies. Defendant's standing to raise these arguments is less than clear.

 Under the law of towage the fault of the tug and the tow generally are considered separately, and each will be found liable to a third party only in proportion to their respective individual fault. *See* T.J. Schoenbaum, *Admiralty & Maritime Law* (2001), Vol. 2, § 12–7. This principle is applicable in a proceeding to limit liability. *Id.* at § 12–8. Thus, only the value of offending vessel or vessels may be included in a limitation fund.

The preceding principles are derived from the celebrated case of *Liverpool, Brazil & River Plate Steam Navigation Co. v. Brooklyn Eastern District Terminal,* 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130 (1919). There, a tug was proceeding up the East River with a carfloat lashed to its port side and a disabled tug lashed to its starboard side. While navigating the river the tug collided with a steamship. The carfloat was the actual vessel that struck the steamship. Justice Holmes, writing for the Court, opined that the words "any vessel" in the Limitation of Liability Act applied to the offending vessel and not others merely attached to it. Thus, only the value of the tug was required to be included in the limitation fund, because the carfloat was a "passive instrument in the hands [of the tug, and] for the purposes of liability the passive instrument of the harm does not become one with the actively responsible vessel by being attached to it." *Id.* Thus, where the tow merely is passive in a marine casualty, the courts have employed the concept of "dominant mind" to place liability on the tug and to absolve the tow from responsibility. *See, e.g., Canarctic Shipping Co., Ltd. v. Great Lakes Towing Co.,* 670 F.2d 61 (6th Cir.1982); *Alter Co. v. M/V Miss Sue,* 536 F.Supp. 313 (E.D.La.1982).

 But the rule of *Liverpool* is not absolute. If the evidence shows some breach of duty on the part of the tow or an act of negligence attributable to it that played a part in bringing about the casualty, the tow may be found to be an offending vessel along with the tug and properly included in the limitation fund. *See Dow Chemical Co. v. Tug Thomas Allen,* 349 F.Supp. 1354 (E.D.La.1972) (observing general rules that where tug supplies motor power she becomes the dominant mind

claimant case court may reserve issues in limitation proceeding until plaintiff has obtained a judgment which exceeds the owner's claimed interest in the vessel).

and the tow is relieved of responsibility in a marine casualty; where the tow is responsible for navigation of the tug it may become the dominant mind and relieve the tug of liability; and where both the tow and the tug commit acts of negligence that proximately cause the casualty, each becomes an offending vessel and damages will be divided on the basis of comparative fault); *Chevron U.S.A., Inc. v. Progress Marine, Inc.,* 1980 A.M.C. 1637 (E.D.La. 1979) ("When a maritime collision occurs which involves a tug and tow, the courts have developed the concept of the 'dominant mind' in order to impose liability for the collision on the tug for faults in navigation, even though the tow may have contributed to the problem ... but where, however, the collision is the result of some breach of duty on the part of the tow, and not the result of some action or inaction on the part of the tug, the tow may be held solely liable for the damages."). Thus, where the tug and tow are owned separately, the negligence of the tug cannot be imputed to the tow and a third party cannot claim a maritime lien on the tow unless its fault is independently established or an agency relationship exists between the tug and the tow. *See Sturgis v. Boyer,* 65 U.S. (24 How.) 110, 16 L.Ed. 591 (1860); *The Eugene F. Moran v. New York Central & Hudson River R. Co.,* 212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600 (1909). *See also Deep Sea Tankers v. The Long Branch,* 258 F.2d 757, 774 (2d Cir.1958) (if vessel in tow of a negligent tug also is at fault in marine casualty, then the value of both vessels properly is included in the limitation fund).

■ Plaintiff's proposed amended complaint avers that "Ohio River Company is the owner of Barge No. 5342 upon which plaintiff was injured, said barge being of a dominant mind, whose value should be added to the limitation fund." Proposed First Amended Complaint at ¶ 5. It makes no further allegation pertaining to

the basis for finding fault attributable to the barge. While defendant contends that the only cause of plaintiff's injury that the court could find as emanating from the barge would be plaintiff's negligence in providing hand signals to the pilot of the tug, plaintiff may well be able to propose alternative bases for liability against the barge. It follows that under the well-establishes principle governing leave to amend plaintiff is entitled to develop the record and pursue any such theory against the party that has a stake in that portion of the controversy. Accordingly, plaintiff's motion to amend his complaint to add the Ohio River Company as a defendant in the Limitation of Liability Act proceeding will be granted.

Plaintiff also has moved for summary judgment on defendant's affirmative defense of limitation of liability, arguing that defendant has failed to come forward with evidence reflecting the proper measure of value for the *M/V Bonnie J. Johnson.* Defendant revealed in its pretrial narrative statement that the value of *M/V Bonnie J. Johnson* at the time in question was $150,000.00. Defendant subsequently revealed that this figure was based on the owner of the vessel's valuation and the declaration sheet of the policy of haul insurance placed on the vessel at the time of the accident. The owner claims to have forty years of experience in the river industry, which includes the buying and selling of vessels on a number of occasions.

Plaintiff asserts defendant's forms of proof fail to meet its evidentiary burden in establishing the affirmative defense, making summary judgment appropriate. Defendant contends plaintiff merely has pointed to grounds for contesting the claimed value of the vessel.

■ A vessel's value for the purpose of determining the amount of a limitation fund is assessed at the end of the voyage

during which the casualty occurred. *In re American Milling Co.,* 125 F.Supp.2d 981, 984–85 (E.D.Mo.2001) (collecting cases). In *Standard Oil of New Jersey v. Southern Pacific Co.,* 268 U.S. 146, 155, 45 S.Ct. 465, 69 L.Ed. 890 (1925), the Supreme Court set forth the basic formula for ascertaining the value of a vessel in a limitation of liability proceeding. That ultimate measure is the fair market value of the vessel. *Id.* This may be established by evidence of either the actual sale of the vessel or sales of comparable vessels at the approximate time and within the relevant market. Only if no market exists for the vessel or contemporary sales of like vessels are unavailable may other forms of evidence be used to set the fair market value. In all events the court is to ascertain the vessel's value by determining the "sum which, considering all the circumstances, probably could have been obtained for [the vessel] on the date of the [casualty]; that is, the sum that in all probability would result from fair negotiations between an owner willing to sell and a purchaser desiring to buy." *Id.* at 155–56, 45 S.Ct. 465. Making this assessment is not governed by a talismanic formula, but instead is to be based upon "a reasonable judgment having its basis in a proper consideration of all relevant facts." *Id.* at 156, 45 S.Ct. 465.

■ The principles announced in *Standard Oil* have led lower courts to recognize that in valuing a vessel "the first search is for contemporaneous sales of comparable vessels." *Barton v. Borit,* 316 F.2d 550, 552 (3d Cir.1963). The search is not limited to the immediate area where the vessel was operating, but encompasses comparable markets where similar vessels are bought and sold. *Id.* If such markets produce evidence of a number of sales of similar vessels on an open market, the figures from those sales will "set the limits of valuation to which the court must adhere, and resort to other indicia of value is not warranted." *Id.* at 553 (*citing Texas*

Co. v. R. O'Brien & Co., 242 F.2d 526, 527 (1st Cir.1957)).

■ Where the market value for a vessel cannot be established through contemporaneous sales of comparable vessels, a court may look to other indicia of value. *In re American Milling Co.,* 125 F.Supp.2d at 985 (*citing United States Fire Ins. Co. v. Allied Towing Corp., et al.,* 966 F.2d 820, 826 (4th Cir.1992)). In such circumstances a court may resort to other relevant evidence bearing on value, such as replacement costs appropriately depreciated. *Barton,* 316 F.2d at 553.

The current record suggests that in all likelihood the *M/V Bonnie J. Johnson* had a market value on the date in question. In light of this fact the court's sole endeavor is to determine what that value was, not to devise some other measure of value for the vessel. *The Texas Co.,* 242 F.2d at 527; *Barton,* 316 F.2d at 552. "This is not to say that other factors besides sales [cannot] be regarded [in ascertaining that value], but they should [be] considered only insofar as they shed light upon this single objective." *The Texas Co.,* 242 F.2d at 527.

■ Defendant does not seek to establish the value of the vessel by some measure other than fair market value, but instead seeks to establish fair market value through a lay appraisal from the owner of the vessel as corroborated by the amount of insurance the owner placed on the vessel during the time in question. While plaintiff may be able to proffer comparable sales that reflect the best evidence of market value, it does not follow that defendant's evidence of value is incompetent on its face, thereby entitling plaintiff to summary judgment. Accordingly, whether defendant's proposed evidence is sufficient to meet its evidentiary burden and/or establish an appropriate measure of fair market value must be determined after the record is developed more fully at

trial and as a result plaintiff's motion for summary judgment must be denied.

As previously noted, plaintiff has moved to strike defendant's limitation of liability defense due to defendant's failure to comply with discovery requests. Defendant denies that it failed to comply with its obligations under the Federal Rules of Civil Procedure and contends that in any event plaintiff has not been prejudiced by its late revelation of the responsive information requested. At the pretrial/settlement conference the court expressed its view that defendant had failed to comply with its discovery obligations and indicated that although it would consider plaintiff's motion to strike in further detail, it believed a sanction in the form of costs relating to that portion of any additional discovery necessitated by defendant's noncompliance may well be appropriate.

Plaintiff propounded an interrogatory to defendant on October 11, 2000, which inquired:

> With regard to your defense of limitation of liability, kindly state the basis therefor including but not limited to the value of the vessel, connected vessels and/or flotilla involved in the work activity in which plaintiff's vessel was engaged when the alleged injury occurred, along with defendant's basis for assessment of value (to be answered only if defendant claims a limitation of liability as a defense).

Defendant responded to the interrogatory as follows:

> Defendant is in the process of determining this information. The estimated value will be supplied when obtained.

Defendant did not provide any further information during discovery. Defendant's valuation of the vessel was revealed for the first time in its pretrial narrative statement, which stated in pertinent part:

> Defendant also notes that it has raised a limitation of liability defense in its An-swer. Defendant intends to fully pursue this defense. In that regard, defendant intends to raise and litigate its right to limit liability or be exonerated of liability under the Limitation of Liability Act, 42 U.S.C. § 181 *et seq.* Defendant will establish that the value of the *M/V Bonnie J. Johnson* at the time of the accident was $150,000 or less. Defendant therefore intends to assert that it should be exonerated of all liability in this matter and/or that its liability should be limited to the value of the vessel at the time, a maximum of $150,000, or less, as the evidence may establish.

Defendant further revealed that the valuation was based upon an informal assessment made by defendant's president and chief executive officer, Philip D. Johnson, Sr., who insured the vessel for $150,000.00 in an insurance policy in force at the time of the accident.

Defendant argues that plaintiff has not been prejudiced by its post-discovery revelation of the information pertaining to its valuation of the *M/V Bonnie J. Johnson*. In support of this defendant notes that it provided Philip Johnson, Sr., for deposition and plaintiff was aware of the physical characteristics of the vessel. In light of these circumstances defendant asserts that plaintiff's failure to inspect and appraise the vessel independently and/or move the court to conduct an independent appraisal of the vessel sufficiently undermines plaintiff's claim of prejudice.

While the court's scheduling order governing further proceedings on the limitation of liability defense will provide plaintiff with additional time within which to prepare this portion of the case, it does not follow that defendant's failure to comply with its obligations under the Federal Rules of Civil Procedure can simply be overlooked by the court. Plaintiff propounded a relevant interrogatory request-

ing defendant to disclose the claimed value of the vessel and the basis for that valuation. Defendant indicated it would provide the requested information when it became available. Under Fed.R.Civ.P. 26(e) defendant had an obligation to forward that information as soon as it became available. Post-discovery disclosure by defendant indicates defendant's valuation is based upon intimate knowledge of its chief executive officer and the owner of the vessel as corroborated by an insurance policy in force at the time of the accident. This information was available to defendant at the time it responded to the interrogatory. It also was available when defendant made the decision to rely on it in support of the defense. Defendant's failure to disclose this information in a timely manner was without substantial justification.

Fed.R.Civ.P. 37(c) provides in pertinent part:

A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed.R.Civ.P. 37(c)(1). The rule was adopted in 1993 to curb the use of gamesmanship in complying with the requirements of Rule 26. *See* Advisory Committee Notes, Rule 26(a); *Tarlton v. Cumberland County Correctional Facility*, 192 F.R.D. 165, 169 (D.N.J.2000). Although written in mandatory terms, the rule also expressly provides that sanctions should not be imposed if the failure to disclose is harmless. *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir.1995). "Thus, the rule does not leave district courts without discretion." *Id.* Whether a failure to disclose should be deemed harmless depends upon whether the other parties suffer prejudice. 6 James M.W. Moore, et al., *Moore's Federal Practice*, § 37.63 (3d ed.1997).

Here, the record suggests that defendant's failure to supplement its response to plaintiff's interrogatory might have prejudiced plaintiff by requiring him to reopen and reexamine certain areas of completed discovery, including the need to (1) revisit matters in the deposition of Philip D. Johnson, Sr., and/or (2) reexamine and further explore any additional information used to support the claimed value of the vessel under the insurance policy in question. Plaintiff was entitled to explore these areas during the initial period of discovery and was deprived of an opportunity to do so. Accordingly, while the court will deny plaintiff's motion to strike defendant's affirmative defense of limitation of liability, it will enter an order subjecting defendant to pay for any additional discovery costs and attorney's fees incurred as a result of having to reopen or reexamine areas of discovery further placed at issue by the valuation of Philip D. Johnson, Sr., and the declared value in the insurance policy.[3]

An appropriate order will follow.

3. Each party will be responsible for their own costs as to any other discovery undertaken pursuant to the court's scheduling order, including any independent appraisal of the vessel by plaintiff. As to these matters the court's scheduling order does undermine suf-

*ORDER OF COURT*

AND NOW, this 11th day of September, 2002, for the reasons set forth in the opinion filed this day, IT IS ORDERED that:

1) Plaintiff's motion for leave to add Ohio River Company as a defendant for the purposes of the limitation fund only (Document 31) be, and the same hereby is, **granted**. Plaintiff shall file and serve his first amendment to the complaint without undue delay;

2) Plaintiff's motion for summary judgment (Document 33) be, and the same hereby is, **denied**; and,

3) Plaintiff's motion to strike the affirmative defense of limitation of liability (Document 17) be, and the same hereby is, **denied** without prejudice to plaintiff filing a petition for any costs and fees which plaintiff can establish were incurred as the result of having to reopen or reexamine prior discovery due to defendant's late revelation of its valuation of the *M/V Bonnie Johnson* and the grounds in support thereof.

IT FURTHER IS ORDERED that the limitation of liability proceeding raised by defendant's tenth affirmative defense is bifurcated from plaintiff's jury claims and the limitation of liability proceeding shall be completed pursuant to the following schedule:

1) On or before September 23, 2002, defendant shall file a pleading setting forth all facts necessary to enable the court to determine the amount to which the owner of the vessel's liability shall be limited, including all facts necessary to ascertain the value of the vessel at the close of voyage during which plaintiff was injured. The

pleading also shall identify the amount of any freight then pending;

2) Plaintiff may file a responsive pleading on or before October 7, 2002;

3) Discovery may be conducted on any issue joined by the pleadings through October 31, 2002; and,

4) In the event the jury returns a verdict on plaintiff's Jones Act and/or unseaworthiness claim that exceed the value defendant seeks to establish for the *M/V Bonnie J. Johnson*, then the court will enter a supplemental order scheduling a non-jury bench trial and setting deadlines for the parties' submissions of proposed findings of fact and conclusions of law and briefs in support of judgment on the issues of fact and law necessary to adjudicate the limitation of liability proceeding; and,

IT FURTHER IS ORDERED that plaintiff's motions to take judicial notice of the annual interest rate and consumer price index (Documents 21 & 22) be, and the same hereby are, denied without prejudice to renew at the commencement of trial.

ficiently any claimed prejudice by plaintiff and upon completion of any additional discovery surrounding defendant's claimed valuation, plaintiff will have had an opportunity to

explore all information needed to determine whether a challenge to defendant's valuation is in his best interest.